IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD J. WYANT d/b/a/ | : | CIVIL ACTION NO. |
| MUSCLE LABS USA a/k/a | : | 1:16-CV-639-AT |
| ORDERLEGALSTEROIDS.COM | : | |
| a/k/a MUSCLELABSUSA.COM | : | |
| a/k/a PRIMOLABZ.COM a/k/a | : | |
| PHARMASUPPLEMENTS.COM | : | |
| a/k/a MILITANTMUSCLE.COM, | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

On February 29, 2016, Plaintiff Hi-Tech Pharmaceuticals, Inc. ("Plaintiff")
filed the current action against Richard J. Wyant ("Defendant"), bringing claims
under the Lanham Act, the Georgia Deceptive and Unfair Trade Practices Act,
and Georgia common law.  (Doc. 1.)  Pursuant to the Court's Order of September
1, 2016 (Doc. 13), Plaintiff filed a Second Motion for Default Judgment (Doc. 14).
As of the date of this Order, Defendant has not responded to Plaintiff's
Complaint, First Amended Complaint, or Plaintiff's First or Second Motion for
Default Judgment, despite being served with each of these documents.  (Docs. 6,
7, 12, 14.)  The Clerk entered default against Defendant on May 24, 2016.

For the reasons stated below, the Court **GRANTS** Plaintiff's Second Motion for Default Judgment [Doc. 14].

## I.   LEGAL STANDARD

The legal standard for granting a default judgment in the Eleventh Circuit is as follows:

> When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). Because of our "strong policy of determining cases on their merits," however, default judgments are generally disfavored. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted). Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
>
> . . . [W]e have subsequently interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").
>
> When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).

*Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).  The First Amended Complaint ("FAC") meets this standard as to each of Plaintiff's claims.

## II.   ANALYSIS

### A.   Plaintiff Has Stated Claims for Trademark Infringement Under 15 U.S.C. § 1114

To establish a prima facie case of trademark infringement under 15 U.S.C. § 1114, a plaintiff must show that (1) it has trademark rights in the mark or name at issue (i.e., it has a valid trademark) and (2) the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.  *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).  Plaintiff's FAC contains sufficient factual matter to establish these elements.

#### 1.   Plaintiff's Trademarks Are Valid and Enforceable

As to Plaintiff's rights in the trademarks at issue, Plaintiff's FAC establishes that Plaintiff is the owner of the Dianabol® and Anavar® trademarks (the "Trademarks").  (Doc. 7 ¶¶ 1, 14, 21; Doc. 7-1; Doc. 7-2.)  The Trademarks are registered on the United States Patent and Trademark Office's principal register

and have "incontestable"[1] status.  (Doc. 7 ¶¶ 1, 14-15, 21-22; Doc. 7-1; Doc. 7-2.)
Under the Lanham Act, a certificate of registration of a mark on the principal
register, such as those that exist for Dianabol® and Anavar®, is *prima facie*
evidence of the validity of the registered mark and the registrant's exclusive right
to use the mark. 15 U.S.C. § 1057(b).  Further, "incontestable" trademarks are
presumed valid and relatively strong.  *Flag Co., Inc. v. Chan*, 454 Fed. App'x 776,
778-79 (11th Cir. 2011)*; Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322,
328 (11th Cir. 1989); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d
1293, 1321 (N.D. Ga. 2008).  Plaintiff's FAC therefore establishes that Hi-Tech
has rights in the Trademarks, the Trademarks are valid, and that the Trademarks
are relatively strong.

### 2.   There Is a Likelihood of Confusion Between Plaintiff's Trademarks and the Product Names Used by Defendant

Plaintiff's FAC also establishes the second element of a trademark
infringement claim regarding a likelihood of confusion between Plaintiff's
Trademarks and the marks used by Defendant.  Courts consider the following
seven factors in evaluating whether a likelihood of consumer confusion exists:

1. Type of mark
2. Similarity of mark
3. Similarity of the products the marks represent

---

[1] "Five years after a mark has been registered, its holder may file an affidavit with the United States Patent and Trademark Office certifying that the mark has been in continuous use since registration, that there is no pending proceeding concerning the mark, and that there has been no adverse decision concerning the registrant's ownership of the mark.  15 U.S.C. § 1065.  If these requirements are met, the mark is declared 'incontestable,' and is presumed valid." *Flag Co., Inc. v. Chan*, 454 Fed. App'x 776, 778-79 (11th Cir. 2011) (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.,* 880 F.2d 322, 328 (11th Cir. 1989), *cert. denied* 498 U.S. 950, 111 (1990)).

4

4.  Similarity of the parties' retail outlets (trade channels) and customers
5.  Similarity of advertising media
6.  Defendant's intent
7.  Actual confusion

*Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). Of these factors, the Eleventh Circuit "considers the type of mark and the evidence of actual confusion to be the two most important factors." *Lone Star*, 122 F.3d at 1382. The factual assertions in Plaintiff's FAC establish that these factors – particularly the type of mark and actual confusion factors – altogether weigh in Plaintiff's favor.

First, the type of mark a plaintiff has determines whether it is strong or weak. *See John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 973 (11th Cir. 1983). Stronger marks are accorded greater protection. *See id.* at 973. Given the incontestable status of the Trademarks (Doc. 7 ¶¶ 15-22), the Trademarks are presumed to be "relatively strong." *Dieter*, 880 F.2d at 329. This first factor, therefore, weighs in Hi-Tech's favor.

Second, the Defendant's product names are very similar to the Trademarks. Defendant's "Dianabol" product name is precisely identical to Hi-Tech's Dianabol® trademark (Doc. 7 ¶ 28), and Defendant's "Dianadrol" product name is all but identical to Hi-Tech's Dianabol® trademark (Doc. 7 ¶ 39). As for "Dianadrol," Defendant simply changed the "b" in Dianabol® to a "dr," rendering the look and sound of the marks virtually indistinguishable. (*Id.* ¶ 39.) Similarly,

with Anivar, Defendant simply changed the second "a" and Anavar® to an "i," creating a product name that is phonetically identical and visually similar.  (*Id.* ¶ 51.)  Plaintiff's FAC therefore establishes that the second factor also weighs in its favor.

Third, the products that the marks represent are also similar.  Both Plaintiff's and Defendant's products at issue are dietary supplements for muscle gain.  (Doc. 7 ¶¶ 13, 20, 30, 41, 53.)  Thus, the third factor weighs in Plaintiff's favor.

Fourth, the parties' trade channels and customer bases are somewhat similar.  This factor considers "where, how, and to whom the parties' products are sold."  *Frehling*, 192 F.3d at 1339.  "The parties' outlets and customer bases need not be identical, but some degree of overlap should be present."  *Id.*  While Plaintiff's products are sold in brick and mortar locations, both Plaintiff's and Defendant's products are sold online.  (Doc. 7 ¶¶ 17, 24, 33-34, 43-44, 55-56.) Accordingly, there is overlap in the parties' trade channels to the extent required by *Frehling*.  There is also some overlap between the parties' customer bases, since both parties target individual customers who are seeking a dietary supplement to assist with muscle gain.  (*Id.* ¶¶ 13, 20, 30, 41, 53.)  Thus, some degree of overlap in trade channels and customer bases exists, so this fourth factor weighs slightly in Plaintiff's favor.

As for the fifth factor, the similarity of the parties' advertising media also weighs in Plaintiff's favor.  This factor focuses on "each party's method of

advertising," and "not necessarily on the precise newspapers or magazines which are used." *Frehling*, 192 F.3d at 1339; *Gold Kist Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291, 1301 (N.D. Ga. 1989).  Here, both of the parties' subject products are advertised online.  (Doc. 7 ¶¶ 17, 24, 33-34, 43-44, 55-56.)  These are similar channels of media, so this factor favors Plaintiff.  *See Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1316 (N.D. Ga. 2008).

The sixth factor, the defendant's intent, also weighs in Plaintiff's favor. Plaintiff's FAC sets forth facts that provide for the reasonable inference that Defendant adopted the Dianabol, Dianadrol, and Anivar marks with the intent to profit through imitation of Plaintiff's Dianabol® and Anavar® trademarks.  For instance, there are facts establishing that Defendant was likely aware of Plaintiff's Trademarks, and their value, when he began using the Dianabol, Dianadrol, and Anivar product names.  Specifically, Plaintiff's awareness of Plaintiff's Dianabol® and Anavar® trademarks is supported by the fact that the Trademarks are on the Federal Register and that Plaintiff has made widespread and continuous use of the marks in the dietary supplement industry for approximately 15 years.  (Docs. 7-1, 7-2, 7 ¶¶ 16, 23.)  Plaintiff's FAC also establishes that the Trademarks have substantial recognition among the consuming public, and that the Trademarks enjoy extensive goodwill.  (Doc. 7 ¶¶ 16, 23.)  Defendant was also aware of the Trademarks when he began selling goods with strikingly similar names.  (*Id.* ¶¶

36, 46, 58.)  Thus, the facts in the FAC establish that the sixth factor also weighs against Defendant.[2]

Plaintiff also pleads actual consumer confusion, thereby satisfying the seventh and last factor in the likelihood of confusion analysis.  (*Id.* ¶¶ 35, 45, 57.)[3]

In sum, Plaintiff's FAC pleads facts sufficient to establish that there is a likelihood of consumer confusion between Plaintiff's Dianabol® and Anavar® trademarks and Defendant's Dianabol, Dianadrol, and Anivar product names.

## B.  Plaintiff Has Stated Claims for False Designation of Origin Under 15 U.S.C. § 1125(a)

The false designation of origin provision under 15 U.S.C. § 1125(a) applies to "any word, term, name, symbol, or device" that "is likely to cause confusion." Such a false designation of origin can "occur[] when a producer misrepresents his own goods or services as someone else's."  *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 28 n.1 (2003).  To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it "such that consumers were likely to confuse the two." *Custom Mfg. Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 647-48 (11th Cir.

---

[2] The Court notes that Defendant's intent to profit through imitation is sufficient, on its own, to create the presumption of a likelihood of confusion.  *Bauer Lamp Co., Inc. v. Shaffer,* 941 F.2d 1165, 1172 (11th Cir. 1995); *Babbit Electronics v. Dynascan Corp.,* 38 F.3d 1161, 1179 (11th Cir. 2015); *John H. Harland Company v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983) (quoting *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980)).

[3] Evidence of actual confusion is not necessary to support a finding of a likelihood of confusion. *See, e.g., E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985); *Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir. 1999) ("[W]e have held that a plaintiff is not required to provide evidence of actual confusion in order to prove likelihood of confusion.").

2007) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir. 1997); *SunAmerica Corp. v. Sun Life Assurance Co. of Canada,* 77 F.3d 1325, 1334 (11th Cir. 1996)).  Thus, analysis of "likelihood of confusion" is the same under both sections of the Lanham Act.  *ITT Corp. v. Xylem Group,* LLC, 963 F. Supp. 2d 1309, 1317 n.2 (N.D.Ga. 2013) (citing *Suntree Techs., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1345 (11th Cir. 2012)); *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 n.4 (11th Cir. 2001)).

As set forth herein, Plaintiff's FAC establishes Plaintiff's enforceable rights in the Dianabol® and Anavar® trademarks, and that there is a "likelihood of confusion" between Defendant's subject marks and those of Plaintiff.  Plaintiff has therefore sufficiently pleaded claims for false designation of origin under 15 U.S.C. § 1125(a).

### C. Plaintiff Has Stated Claims for Violations of the Georgia Deceptive and Unfair Trade Practices Act

Under Georgia's Deceptive and Unfair Trade Practices Act:

A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . .

(2)  Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3)  Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; . . . or . . .

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

O.C.G.A. § 10–1–372(a)(2)-(3), (12). In order to establish a violation of this section, a plaintiff need only establish that "the use of a name causes confusion to others who are using reasonable care." *ITT Corp. v. Xylem Group*, LLC, 963 F. Supp. 2d 1309, 1327 (N.D. Ga. 2013) (quoting *Eckles v. Atlanta Tech. Grp., Inc.,* 485 S.E.2d 22, 24 (Ga. 1997)).   "Whether confusion occurs under Georgia Deceptive Trade Practices Act, O.C.G.A. § 10–1–372, requires the same 'likelihood of confusion' analysis found in trademark-infringement claims under the Lanham Act." *Id.* (citing *Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.,* 412 S.E.2d 588, 589 (Ga. Ct. App. 1991); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 265 (5th Cir. 1980)).

As set forth in Section III(a)(2) herein, Plaintiff's FAC sufficiently pleads "likelihood of confusion" required by the Lanham Act.  Thus, the FAC also states claims under Georgia's Deceptive and Unfair Trade Practices Act.

### D.   Plaintiff Has Stated Claims for Unfair Competition

Unfair competition claims based upon consumer confusion are governed by the same standard as trademark infringement claims under the Lanham Act. *Alaven Consumer Healthcare, Inc. v. DrFloras, LLC*, No. 1:09–CV–705–TWT, 2010 WL 481205, at *5 (N.D. Ga. Feb. 4, 2010) (citing *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 839 (11th Cir. 1983); *Amstar,* 615 F.2d at 258–59)).  Plaintiff has therefore also stated a claim for unfair competition.

### E.   Plaintiff May Be Entitled to Disgorgement of Profits, Treble Damages, and Attorney Fees Under the Lanham Act

15 U.S.C. § 1117(a) provides that:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

As set forth herein, Plaintiff's FAC establishes willful and deliberate violations of Plaintiff's rights in the Trademarks as well as violations of 15 U.S.C. § 1125(a), such that Plaintiff may be entitled to recover Defendant's profits, actual damages, and costs of the action.  Further, in cases of intentional infringement, such as that set out by Plaintiff in this case, a court must award treble damages and attorney fees unless there are extenuating circumstances.  15 U.S.C. § 1117(b); *Babbit*, 38 F.3d at 1183; *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, No. 1:00-CV-1934-BBM, 2003 WL 22331254, at *17-18 (N.D. Ga. May 9, 2003); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991).  Thus, subject to a showing of Defendant's profits, actual damages, costs,

and reasonable fees, Plaintiff may be entitled to recover the same, including damages trebled.

### F.   Plaintiff May Be Entitled to Punitive Damages

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Georgia common law also provides for exemplary damages "for injuries wantonly, recklessly, or maliciously inflicted." *K-Mart Corp. v. Hackett*, 514 S.E.2d 884, 888-89 (Ga. Ct. App. 1999) (internal citation omitted). Plaintiff's FAC establishes the following: Defendant adopted its subject product names with knowing and willful disregard for the rights of Plaintiff, Defendant adopted the product names with the intent to deceive and confuse consumers, and Defendant used the product names with willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Plaintiff's Trademarks and brands. (Doc. 7 ¶¶ 36, 46, 58, 67, 76, 85.) Georgia courts have regularly imposed such damages against defaulting defendants where the allegations in the complaint, such as those in this case, meet the requirements for same. *See, e.g., Id.*; *COMCAST Corp. v. Warren*, 650 S.E.2d 307, 312-13 (Ga. Ct. App. 2007); *Wise Moving & Storage, Inc. v. Rieser-Roth*, 578 S.E.2d 535, 535-37 (Ga. Ct. App. 2003); *Hill v. Johnson*, 437 S.E.2d 801, 802-03 (Ga. Ct. App. 1993). Plaintiff may therefore be entitled to an award thereof.

## III.   CONCLUSION

Pursuant to Federal Rule of Civil Procedure 55(b), the Court hereby **GRANTS** Plaintiff's Motion, and judgment is entered in favor of Plaintiff and against Defendant as to Defendant's liability for each of Plaintiff's claims.  This judgment may also include Defendant's profits on the Dianabol, Dianadrol, and Anivar products, Plaintiff's damages trebled, costs, attorney's fees, punitive damages, and injunctive relief.

As Plaintiff's claims are not for a sum certain, and as Plaintiff seeks injunctive relief, Plaintiff is permitted to conduct discovery through July 31, 2017 to aid the Court in determining the appropriate damages and injunctive relief remedy pursuant to this judgment.  If Plaintiff needs more or less time than the time allotted for discovery, Plaintiff is directed to advise the Court no later than June 15, 2017.  A hearing on the relief to be awarded is hereby set to begin at 10:30 A.M. on Monday, August 7, 2017.  The Court **ORDERS** this case **ADMINISTRATIVELY CLOSED**.[4]

**IT IS SO ORDERED** this 19th day of April, 2017.

_Amy Totenberg_
**Amy Totenberg**
**United States District Judge**

---

[4] Administrative closure of a case is a docket control device used by the Court for statistical purposes.  Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner.  A party may move to re-open an administratively closed case at any time.